J-S04020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JASON ALLEN ESTEP | |
| Appellant | No. 1215 MDA 2020 |

Appeal from the PCRA Order August 19, 2020
In the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0003628-2018

BEFORE: OLSON, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:　　　　　　**FILED MARCH 8, 2021**

Appellant, Jason Allen Estep, who is serving a sentence of four to eight years' imprisonment for rape and related offenses, appeals from an order denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, without a hearing. Appellant argues that trial counsel was ineffective for failing to move to strike the entire venire due to an outburst by one of the venirepersons during jury selection. We affirm.

The evidence adduced during trial is as follows. On April 12, 2018, the Northern York County Regional Police Department responded to a call regarding a rape in the marital home of Appellant and the victim, his estranged wife, R.E. R.E. no longer lived in the marital home as she and Appellant were going through divorce proceedings. On the day of the rape, she went to the martial home to visit her son, J.E. Jr., and cut Appellant's hair. While R.E. was at the home, Appellant made sexual advances towards her; she pulled

away and indicated to Appellant that she was uncomfortable. At that point, Appellant became angry and upset; he pulled her into the bedroom and pushed her down on the bed. R.E. testified that she told him to let her up as she pushed him away and told him no. She punched, kicked, and clawed at Appellant, digging in her nails. Appellant then pulled out his penis, licked her vagina, inserted his penis into her vagina, and ejaculated. R.E. hurriedly dressed and left the home; shaking, she drove to a nearby thrift shop parking lot and contacted police.

Officer Erika Eiker responded to the parking lot and met with R.E. Officer Eiker testified that R.E. was visibly emotional and upset, crying as she described what had happened. R.E. went to York Hospital for a forensic examination where she presented with abrasions on her right nipple that ultimately left scabs as well as scraped areas around her navel. Swabs collected from R.E.'s genitalia and fingernails was sent for DNA processing. R.E. testified that after leaving the house, she received a series of text messages from Appellant. The messages read as follows:

> [R.E.], what are you doing? So you're calling the cops on me? [R.E.], I'm sorry. I don't know how to take your rejection. Just why I want to get therapy. I want to be a better person towards you and [J.E.]. I want to be able to learn how to accept your negativity towards me and try to make it positive. Could you please give me some suggestions to ask to help you so I'm able to handle you better without no repercussions on you. Please help me. I'm tired of hurting you.

N.T., 3/13/06, at 106-07.

- 2 -

Detective William Haller testified that he responded to the scene and spoke with Appellant. Appellant indicated to the detective that R.E. had told him no during the intercourse. Based on R.E.'s statement, the police obtained a search warrant. Detective Haller testified that he went through the warrant with Appellant, line by line. Appellant told the detective that R.E.'s statement concerning the events were accurate. He agreed with her statements that she tried to resist but that he pulled her into the bedroom and continued with intercourse despite her protestations and requests that he stop. While at the scene, Detective Haller took photographs of Appellant. The photographs showed claw marks on the upper portion of his body. When asked about the marks, Appellant indicated to Detective Haller that he received the marks while R.E. resisted his assault. Detective Haller collected a buccal swab from Appellant for submission for DNA analysis. The Commonwealth and Appellant stipulated at trial that the DNA profile obtained from the analysis of R.E.'s fingernail and vaginal swabs matched Appellant.

On March 13, 2019, the case proceeded to jury selection. During *voir dire*, Juror 342[1] told the court that another juror, Juror 389, had stated on the elevator that she had been raped and did not wish to serve on the jury for this case. N.T. Trial, 3/13/19, at 17. Juror 342 indicated it would have no effect

_____

[1]At this point in the proceedings, this individual and the others interviewed by the trial court were technically venirepersons instead of jurors. For the sake of convenience, we will refer to them as jurors.

- 3 -

on her deliberations, but the court dismissed her because prior DUI convictions made her ineligible to serve as a juror. *Id.* at 17-18.

The court had a sidebar discussion with counsel and the juror in question, Juror 389. She indicated that she had been raped and found this type of case to be very upsetting. *Id.* at 18-19. She stated that she had only expressed her feelings to the tipstaff, though there were other jurors around at the time. *Id.* at 22. She told the court that she could not be fair and impartial, and the court excused her from the jury. *Id.* at 21.

The trial court held individual conversations with the eight other jurors who had been in the elevator with Juror 389. Juror 145 stated that he heard Juror 389 express concern regarding the nature of the case, but this would not affect his ability to be fair and impartial. *Id.* at 23-24. Juror 222 stated that Juror 389 became visibly upset when the tipstaff indicated this was a rape case, but he stated it would not affect his ability to be fair and impartial. He also indicated that he could follow the judge's instructions. *Id.* at 24-25. Juror 329 indicated he was present when Juror 389 got upset. *Id.* at 26. He first indicated that it might affect him, but he then stated he was sure he could follow the judge's instructions. *Id.* at 27. Juror 189 indicated he "went through the same thing" as Juror 389 and would "probably be biased." *Id.* The court struck this juror for cause. Juror 420 said that Juror 389's statement would not prevent him from being fair and impartial. *Id.* at 30. Juror 132 stated that Juror 389's remarks would not interfere with his ability to be fair

and impartial. *Id.* at 31. Juror 191 stated that Juror 389's comments would not inhibit his ability to be fair and impartial. *Id.* at 31-32. Juror 84 stated that Juror 389's outburst would not interfere with his ability to remain fair and impartial. *Id.* at 32.

Of the nine jurors who heard Juror 389's statements to the tipstaff about her prior assault and uneasiness about the case, Jurors 342 and 189 were stricken by the court for cause, *id.* at 54, and only Jurors 329 and 132 were seated on the jury. *Id.* at 58.

The jury found Appellant guilty of rape and related offenses, and the trial court sentenced Appellant to the aforementioned term of imprisonment. Appellant filed a timely post-sentence motion, which the court denied, and a timely notice of direct appeal. Subsequently, Appellant withdrew his direct appeal and filed a timely PCRA petition. He later filed an amended PCRA petition raising several claims of ineffective assistance. On July 27, 2020, the PCRA court filed a notice of intent to dismiss the petition without a hearing. On August 18, 2020, the court entered an order dismissing the petition. Appellant filed a timely notice of appeal from the order of dismissal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises one issue in this appeal:

Whether [Appellant] established by the preponderance of the evidence that, due to a prejudicial outburst during jury selection, trial counsel was ineffective in failing to request that the court strike the entire venire to ensure an impartial jury, or, if counsel requested this remedy, the court erred in denying the request.

Appellant's Brief at 4.

To obtain relief on a claim of ineffective assistance of counsel, Appellant must prove that: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his actions or failure to act; and (3) the petitioner was prejudiced by counsel's deficient performance such that there is a reasonable probability that the result of the proceeding would have been different absent counsel's error or omission. **Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987). Failure to satisfy any one of these prongs is fatal to a claim of ineffective assistance. **Commonwealth v. Chmiel**, 30 A.3d 1111, 1128 (Pa. 2011). Counsel is presumed to have rendered effective assistance. **Commonwealth v. Sepulveda**, 55 A.3d 1108, 1117 (Pa. 2012).

When reviewing a PCRA order, we examine whether the record supports the PCRA court's factual findings and whether its legal conclusions are free from error. **Commonwealth v. Hannibal**, 156 A.3d 197, 206 (Pa. 2016). We view the PCRA court's findings and evidence of record in the light most favorable to the prevailing party. **Commonwealth v. Koehler**, 36 A.3d 121, 131 (Pa. 2012). We review the PCRA court's legal conclusions de novo. **Commonwealth v. Roney**, 79 A.3d 595, 603 (Pa. 2013). The petitioner has the burden of persuading us that the PCRA court erred and that such error requires relief. **Commonwealth v. Wholaver**, 177 A.3d 136, 144-45 (Pa. 2018).

We conclude that the PCRA court properly dismissed Appellant's amended PCRA petition without a hearing due to lack of arguable merit.

"[T]he purpose of voir dire is to ensure the empaneling of a fair and impartial jury capable of following the instructions of the trial court." ***Commonwealth v. Lesko***, 15 A.3d 345, 412-13 (Pa. 2011). The standard for determining whether to strike a juror for cause is "whether the jurors' views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. . . . [It is not required] that a juror's bias be proved with unmistakable clarity." ***Commonwealth v. Buehl***, 508 A.2d 1167, 1175-76 (Pa. 1986). Furthermore, "the decision to disqualify prospective jurors is left to the discretion of the trial court, and that decision will not be disturbed on appeal absent an abuse of that discretion." ***Commonwealth v. Ingber***, 531 A.2d 1101, 1103 (Pa. 1987). "The law also recognizes that prospective jurors were not cultivated in hermetically sealed environments free of all beliefs, conceptions and views. The question relevant to a determination of qualification is whether any biases or prejudices can be put aside upon the proper instruction of the court." ***Id.***

Having carefully reviewed the record, we can find no reason for the trial court to have stricken the entire venire. Indeed, we find no error whatsoever in the trial court's decision.

The trial court addressed Juror 389's statements with the eight jurors who heard them. The court struck two of these for cause. Four of the six

remaining individuals did not make it onto the actual jury. As to these jurors, Appellant has no basis to lodge any objection.

We turn to the two jurors who served on the actual jury: Jurors 132 and 329. Juror 132 indicated he was present when Juror 389 became upset. The court asked if that fact would "in any way interfere with [his] ability to be fair and impartial in this case if chosen as a juror," to which Juror 132 replied, "No, sir." N.T. Trial, 3/13/19, at 31. Neither attorney had a follow-up question. Juror 329 indicated he was present when Juror 389 became upset. *Id.* at 26. When the court asked if that would affect his ability to be fair and impartial, he stated "it might." *Id.* at 27. The court asked if he could follow the instructions of the court:

> **The Court:** If I were to instruct you – if you were chosen as a juror and I was to instruct you that you must base your decision upon what you've seen and heard in the courtroom and on what I instruct you the law is, would you be able to do that without that being affected by the comments made by this juror on the way up?
>
> **Juror No. 329:** Yes.
>
> **The Court:** Are you sure about that?
>
> **Juror No. 329:** Yes.

*Id.* Neither attorney had a follow-up question.

We see nothing in the record that casts doubt on the ability of Jurors 132 and 329 to serve fairly and impartially or to follow the court's instructions. To the contrary, both jurors stated their willingness to follow the court's instructions without being influenced by Juror 389's outburst. Their mere

- 8 -

exposure to Juror 389's comments did not render them incapable of serving on the jury. The trial court acted within its discretion by permitting Jurors 132 and 329 to sit on the jury. *Commonwealth v. Briggs*, 12 A.3d 291, 333-34 (Pa. 2011) (juror was not subject to excusal for cause in capital murder prosecution, arising out of the shooting deaths of two sheriff's deputies, on basis that she was caseworker for county child protection agency and had worked as a correctional officer at county jail; juror had never met either of the two slain deputies, juror had no close relationship with district attorney and knew of him only by virtue of his position and the fact that he worked at the courthouse, juror recalled only having spoken once to district attorney regarding a case, and juror testified that she would follow the judge's instructions and had no opinion of defendant's guilt).

In short, Appellant's claim of ineffective assistance lacks arguable merit as to any of the eight jurors who heard Juror 389's remarks. Thus, the PCRA court properly denied Appellant's claim that trial counsel was ineffective for failing to strike the entire venire. Since Appellant's failure to demonstrate arguable merit is fatal to his claim of ineffective assistance, *Chmiel*, 30 A.3d at 1128, we need not address whether Appellant satisfies the remaining two prongs of the ineffective assistance test.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/08/2021